UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

KENT RICHARD JONES,                              Civil File No. 05-0331 (JNE/JGL)

        Plaintiff,

    v.                                           **REPORT AND RECOMMENDATION**

JOHN STUART,

        Defendant.

---

    John Remington Graham, 180 Haut de la Paroisse, St-Agapit, Comte de Lotbiniere, Quebec, G0S1Z0 Canada, for Plaintiff.

    John S. Garry, Assistant Minnesota Attorney General, Suite 1100, 445 Minnesota Street, St. Paul, Minnesota, 55101-2128, for Defendant.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

    Plaintiff Kent Richard Jones brought this action against Defendant John Stuart under 42 U.S.C. § 1983. He claims that Defendant violated his federal constitutional rights, and that he is therefore entitled to a judgment against Defendant for compensatory and punitive damages. Defendant has filed a motion seeking to have this action dismissed pursuant to Fed. R. Civ. P. 12(b), and Plaintiff has filed his own motion seeking summary judgment under Fed. R. Civ. P. 56.

    The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, it will be recommended that Defendant's motion to dismiss be GRANTED, that Plaintiff's motion for summary judgment be DENIED, and that this action be DISMISSED WITH PREJUDICE.

## I.  FACTUAL ALLEGATIONS IN THE COMPLAINT

In 2001, Plaintiff was indicted in Sherburne County, Minnesota, and charged with murdering a woman named Linda Jensen on February 24, 1992. (Complaint, p. 1, ¶ 2.) Two attorneys, Kari Seimi and Bryan Leary, were appointed to represent Plaintiff in his state criminal case.  According to the complaint, Seimi and Leary were employed and supervised by the Minnesota State Public Defender – Defendant John Stuart.  (Id., p. 2. ¶s 3 and 4.)

Plaintiff alleges that Seimi and Leary prepared an unethical and ineffective defense for his criminal case, which required Plaintiff to take the stand at his trial, and give false testimony about his relationship with the victim. (Id., p. 3, ¶ 7.)

In December 2001, a state court jury found Plaintiff guilty of first degree murder. However, the Minnesota Supreme Court later overturned Plaintiff's conviction on direct appeal. State v. Jones, 678 N.W.2d 1 (Minn. 2004).  The State Supreme Court found that the trial court had erred by excluding certain evidence, which purportedly would have suggested that someone else had committed the crime.  (Id., ¶ 8.)

After Plaintiff's conviction was overturned, he was contacted by William Raiche, an investigator who worked for the Public Defender's Office.  Plaintiff allegedly told Raiche "the true facts" about his relationship with the victim and his activities on the day of the murder, and Raiche allegedly "offered to assist the plaintiff extricate himself from the false testimony into which he had been misguided by Mme. Seimi and Mr. Leary," (the two attorneys who had represented him at his trial).  Raiche later told Plaintiff's current counsel, Attorney John

Remington Graham, about his conversation with Plaintiff regarding Seimi's and Leary's allegedly improper defense.  (<u>Id</u>., p. 4, ¶ 9.)

In September 2004, while Plaintiff was awaiting a new trial on the still pending murder charges against him, Attorney Graham replaced the Public Defender's Office as Plaintiff's defense counsel.  (<u>Id</u>., p. 5, ¶ 9.)  Graham subsequently entered into a stipulation with the prosecuting attorneys from the Office of the Minnesota Attorney General to facilitate the taking of depositions from Attorneys Seimi and Leary, as well as Raiche and two other individuals associated with the Public Defender's Office.  (<u>Id</u>., p. 6, ¶ 10.)  Acting on that stipulation, the trial court judge in Plaintiff's criminal case, Judge Alan F. Pendleton, "entered an order on November 1, 2004, directing the taking of the depositions of Mr. Raiche, Mme. Seimi, Mr. Leary," and two other individuals.  (<u>Id</u>.)  Those depositions were scheduled to begin at 9:00 a.m. on Tuesday, November 16, 2004.  (<u>Id</u>.)

Plaintiff alleges that after Defendant became aware of the deposition order, he engaged Attorney Fred Friedman to provide legal representation to the Public Defender's Office and its employees in connection with the scheduled depositions.  (<u>Id</u>., p. 7, ¶ 11(a).)  Thereafter, Defendant – presumably acting through Attorney Friedman – filed a motion seeking to quash the subpoenas that were issued for Seimi and Leary, et al.  Defendant is now being sued for the manner in which the hearing on that motion was scheduled.

Plaintiff contends that Defendant, (not Attorney Friedman), deliberately scheduled a hearing on the motion to quash the subpoenas so that Plaintiff's attorney would not be able to attend the hearing and oppose the motion.  According to Plaintiff, Defendant "scheduled

3

the hearing on his said motion to quash subpoenas for hearing before Judge Pendleton at

8:00 in the morning on [Monday] November 15, 2005 [sic], when he and Judge Pendleton both

well knew that counsel for the plaintiff would be traveling" from Canada to Minnesota to attend

the depositions that were scheduled to begin at 9:00 a.m. the following day – November 16th.

(Id., p. 8, ¶ 11(b).)  Plaintiff further alleges that Defendant deliberately neglected to notify

Plaintiff's counsel about the motion hearing until "only one or two business days before the

hearing."  (Id.)[1]

        The hearing on the motion to quash was held as scheduled on Monday, November 15,

2004, and Attorney Graham was not present, because he was still en route to Minnesota at

that time.  Plaintiff alleges that he was brought into the courtroom for the motion hearing.  He

allegedly was not asked for, and did not voluntarily give, any consent to proceed with the

hearing in the absence of his attorney.  (Id., p. 9, ¶ 11(b).)  Nevertheless, the motion hearing

did proceed, the motion was granted, and the subpoenas at issue were quashed.  (Id.)

        Based on these allegations, Plaintiff now claims that Defendant should be liable to him

for compensatory and punitive damages, for violating his Sixth Amendment right to assistance

of counsel, and his Fourteenth Amendment right to due process, in his state criminal case.

---

[1] According to the Plaintiff's "Affidavit To Verify And Establish Certain Facts In Behalf
Of The Plaintiff," (Docket No. 15, at p. 12), the motion to quash arrived at Attorney Graham's
office on Thursday, November 11, 2004, and he read it on the morning of Friday, November
12, 2004.  The same Affidavit indicates, (at p. 13), that Attorney Graham immediately sent an
"electronic transmission" to Judge Pendleton, indicating that he would be unable to appear
at the motion hearing on the following Monday morning, (November 15th), because he would
then be traveling to Minnesota from his office in Quebec, Canada, in order to attend the
depositions that were scheduled to begin on Tuesday, November 16th.  The Affidavit further
indicates, (at p. 14), that Judge Pendleton received Attorney Graham's "electronic
transmission," and was therefore aware of his travel plans, prior to the motion hearing on
Monday, November 15th.

Plaintiff contends that Defendant deprived him of his right to counsel and a fair trial by scheduling a motion hearing for a time when Defendant knew, or should have known, that Plaintiff's defense counsel would be unable to appear on Plaintiff's behalf.[2]

The current record sheds very little light on the aftermath of Judge Pendleton's order quashing the subpoenas.  There is no indication that Plaintiff's counsel ever asked Judge Pendleton for an opportunity to be heard on the matter, or that he ever asked Judge Pendleton to reconsider his order and re-issue the subpoenas.  Nor does it appear that Plaintiff's counsel tried to appeal Judge Pendleton's order, or that counsel pursued any other means of obtaining the evidence he had been seeking via the depositions.

Furthermore, it cannot be determined whether the outcome of Plaintiff's new criminal trial will be, (or perhaps already has been), affected by the matters alleged in the complaint, as there is no reference to Plaintiff's new trial in the present record.  There is nothing to suggest that Plaintiff has been, or inevitably will be, wrongly convicted in his new trial by reason of the events alleged in the complaint.  Thus, as far as the Court can tell, Plaintiff is

---

[2]  Plaintiff also vaguely insinuates that Defendant may have violated his constitutional rights in one other respect.  The complaint alleges that Defendant sought to fire Investigator Raiche from his position with the Public Defender's Office, because he was upset with Raiche for assisting Plaintiff and Attorney Graham.  Plaintiff apparently believes that Defendant was seeking to intimidate Raiche, so that Raiche would not provide information to Attorney Graham, regarding Seimi's and Leary's allegedly unethical conduct.  Defendant allegedly wanted to stop Raiche from assisting Plaintiff's defense, because he feared that Raiche would thereby damage the image and reputation of the Public Defender's Office.  Plaintiff candidly acknowledges, however, that Defendant's alleged attempt to intimidate Raiche was unsuccessful, and that "Raiche courageously defied defendant, refused to be silent, and expressed an intent to testify truthfully and fully."  (Complaint, p. 8, ¶ 11(a).)  Plaintiff has not explicitly advanced this "Raiche intimidation claim" as a separate cause of action, which is hardly surprising.  Any such claim would obviously be futile, given Plaintiff's acknowledgment that Raiche simply was not intimidated by Defendant.

unable to describe any particular injury that is <u>presently</u> attributable to Defendant's alleged misdeeds. Nevertheless, Plaintiff is seeking a judgment against Defendant for an specified amount of both compensatory and punitive damages.[3]

## II. DISCUSSION

### A. <u>Subject Matter Jurisdiction</u>

Defendant initially contends that this action should be summarily dismissed due to lack of subject matter jurisdiction. This argument must be addressed at the outset, as subject matter jurisdiction is a threshold prerequisite that must always be satisfied before any case can proceed in federal court. <u>Turner v. Armontrout</u>, 922 F.2d 492, 493 (8th Cir. 1991) ("[s]ubject matter jurisdiction... is a threshold requirement which must be assured in every federal case"); Fed. R. Civ. P. 12(h)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

Defendant contends that subject matter jurisdiction is lacking here by reason of the <u>Rooker-Feldman</u> doctrine.

> "The <u>Rooker-Feldman</u> doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. <u>See</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476... (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416... (1923). Instead, federal jurisdiction to review most state court

---

[3]   As noted in the text, Plaintiff apparently has not yet been, and may never be, convicted of any crime as a result of Defendant's allegedly unconstitutional misdeeds. Moreover, he has not identified any other compensable injury, unrelated to the possibility of a wrongful conviction, that resulted from the motion hearing described in his complaint. The apparent absence of any injury warranting more than nominal compensatory damages could spawn speculation about whether Plaintiff had some ulterior motivation, (other than a hope of compensation), for bringing this lawsuit against Defendant.

judgments is vested exclusively in the United States Supreme Court.  See 28 U.S.C. § 1257;  Feldman, 460 U.S. at 486.... [¶]  The Rooker-Feldman doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions."

Lemonds v. St. Louis County, 222 F.3d 488, 492-93 (8th Cir. 2000), cert. denied, 531 U.S. 1183 (2001).

        In other words, Rooker-Feldman bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [Federal] district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corporation, 125 S.Ct. 1517, 1521-22 (2005). See also In re Goetzman, 91 F.3d 1173, 1177 (8th Cir.) ("[u]nder the Rooker-Feldman doctrine, lower federal courts lack jurisdiction to engage in appellate review of state court determinations"), cert. denied, 519 U.S. 1042 (1996).

        Defendant contends that Rooker-Feldman applies to this case, because Plaintiff cannot succeed on his present claims unless he persuades the Federal Court to rule that a state court judge, (i.e., Judge Pendleton), wrongly quashed the subpoenas that had been issued in Plaintiff's state criminal case.  According to Defendant, if Plaintiff wants "a federal court to review the constitutionality of the state court's motion hearing and order, his sole recourse at this juncture is [United States] Supreme Court review by writ of certiorari after proceeding through the Minnesota [state] appellate courts."  ("Reply Memorandum Of Law In Support Of Defendant's Motion To Dismiss," [Docket No. 17], p. 4.)

Plaintiff, however, disclaims any interest in challenging the propriety of the order quashing the subpoenas, and he asserts that the order itself has no direct bearing on the validity of his claims against Defendant.  Plaintiff states that –

> "This suit <u>does not</u> seek to review or reverse or vacate the order quashing subpoenas as entered by the state district court on November 15, 2004.  The complaint does not seek a declaratory judgment, injunction, damages, or other remedy which rests on a finding or even assumes that the state district court acted unlawfully in quashing subpoenas."

(Plaintiff's "Argument For The Plaintiff On Rule 12(B) Motions," [Docket No. 14], p. 5, [emphasis in the original].)

Plaintiff's submissions in this matter plainly and consistently indicate that he is trying to sue Defendant for what he allegedly did, in terms of filing, scheduling and serving the motion to quash, before the motion hearing was even conducted, and that his claims against Defendant are wholly independent of the outcome of the motion.  In Plaintiff's words, "[h]is complaint here is not that the trial judge entered an order quashing subpoenas[;] [h]is complaint is that [Defendant] rigged a hearing to deprive him of the assistance of counsel." (<u>Id</u>. at 7.)

Based on Plaintiff's representations and his explanation of his claims, the Court finds that he is not expressly or implicitly seeking federal court review of the order quashing the subpoenas, (or any other state court order).  Instead, it clearly appears that Plaintiff is seeking to recover damages solely for actions that Defendant allegedly performed before the motion to quash was heard and decided, and without regard to the state court's ultimate ruling on the motion.  Given Plaintiff's characterization of his claims against Defendant, the Court finds that Plaintiff is not directly or indirectly challenging the validity of any state court ruling.  Thus, the

8

Court concludes that this action is not barred by <u>Rooker-Feldman</u>, and that the requirement of subject matter jurisdiction is satisfied in this case.

     B.  <u>Failure To State An Actionable Claim</u>

Defendant also contends that this action should be dismissed because Plaintiff has failed to plead a cause of action on which relief can be granted.  For the reasons discussed below, the Court agrees that Plaintiff's complaint fails to state an actionable claim.

     **(i) Standard of Review**

A complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) "'if it is clear that no relief can be granted under any set of facts that could be proved consistent with allegations'" that have been pleaded.  <u>Frey v. City of Herculaneum</u>, 44 F.3d 667, 671 (8th Cir. 1995), quoting <u>Alexander v. Peffer</u>, 993 F.2d 1348, 1349 (8th Cir. 1993) and <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  In assessing a motion brought under Rule 12(b)(6), a court must "review the complaint most favorably to the non-moving party," bearing in mind that "[c]ivil rights pleadings should be construed liberally."  <u>Frey</u>, 44 F.3d at 671.  The complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Holloway v. Lockhart</u>, 792 F.2d 760, 761-62 (8th Cir. 1986).

The court "must presume that the factual allegations of the complaint are true and accord all reasonable inferences from those facts to the non-moving party."  <u>Id.</u>; <u>see also</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  This does not mean, however, that the court must accept the legal conclusions set forth in the plaintiff's complaint.  <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990) (the court  does not "blindly accept the legal

conclusions drawn by the pleader from the facts"). Conclusory allegations, i.e., allegations that are simply legal conclusions unsupported by specific factual allegations, are not sufficient to state an actionable claim for relief. <u>Frey</u>, 44 F.3d at 671 ("[a]t the very least... the complaint must contain facts which state a claim as a matter of law and must not be conclusory"). Simply put, "the complaint must allege facts, which if true, state a claim as a matter of law." <u>Martin v. Aubuchon</u>, 623 F.2d 1282, 1286 (8th Cir. 1980).

### (ii) Plaintiff's claim for relief

To state an actionable claim for relief under 42 U.S.C. § 1983, as Plaintiff is attempting to do here, a claimant must allege facts showing that the named defendant caused some violation of the claimant's federal constitutional rights, while the defendant was acting under color of state law. The complaint must show "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." <u>Shrum ex rel. Kelly v. Kluck</u>, 249 F.3d 773, 777 (8th Cir. 2001).

In this case, Plaintiff has failed to plead an actionable § 1983 claim against Defendant Stuart, because the facts alleged in the complaint, even if fully substantiated, do not adequately demonstrate that Defendant's alleged actions violated Plaintiff's constitutional rights. The complaint alleges that Defendant did nothing more than schedule a motion hearing for a time when he supposedly knew that Plaintiff's attorney would not be able to attend.[4] The

---

[4] The Court questions whether Defendant himself actually did schedule the hearing, and did give notice of the hearing to Plaintiff's counsel. When a person is represented by counsel, as Defendant allegedly was here, the mechanics of scheduling a motion are normally handled by the person's attorney. Thus, it appears that Defendant may not have been personally responsible for scheduling the motion hearing, or serving notice of the hearing; but rather, it seems more likely that <u>Defendant's attorney</u> took care of those matters – perhaps without any input from Defendant himself. Nevertheless, for purposes of deciding whether

mere scheduling of that motion, and the mere act of notifying Plaintiff's counsel about the motion, did not violate Plaintiff's constitutional rights.

"Liability under § 1983 requires a causal link to, and <u>direct responsibility for</u>, the deprivation of rights" protected by the Constitution.  <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990) (emphasis added); <u>Speed v. Ramsey County</u>, 954 F.Supp. 1392, 1397 (D.Minn. 1997) (Tunheim, J.) (same). "'Section 1983... requires a causal relationship between a defendant's conduct and a plaintiff's constitutional deprivation.  Absent such a relationship, the defendant is entitled to dismissal.'"  <u>Gordon v. Hansen</u>, 168 F.3d 1109, 1113 (8th Cir. 1999), quoting <u>Latimore v. Widseth</u>, 7 F.3d 709, 716 (8th Cir.1993) (<u>en banc</u>), <u>cert</u>. <u>denied</u>, 510 U.S. 1140 (1994).  Thus, to state a cognizable § 1983 claim, the plaintiff must allege facts that show a sufficient cause and effect relationship between the defendant's alleged misdeeds and the alleged violation of the plaintiff's constitutional rights.  That type of causal connection cannot be found in the complaint that is now before the Court.

If Plaintiff's constitutional rights were violated at all, such violations were caused solely by Judge Pendleton's decision to hear the motion to quash the subpoenas without Plaintiff's counsel being present.  Defendant obviously did not compel Judge Pendleton to hear the motion to quash when he did; only Judge Pendleton himself had the authority to proceed with the hearing despite the absence of Plaintiff's counsel.[5]  It was not the filing or scheduling of

_____

Plaintiff has stated an actionable claim, the Court will assume, as Plaintiff has alleged, that Defendant was personally responsible for scheduling the motion hearing, and providing notice of the hearing to Plaintiff's counsel.

[5]  Needless to say, this Court does not express any opinion as to the propriety or impropriety of Judge Pendleton's decision to hear the motion to quash in the absence of Plaintiff's counsel.  The Court does note, however, that Judge Pendleton apparently knew that

the motion to quash that caused the alleged deprivation of Plaintiff's rights to counsel and due process. Nor were Plaintiff's constitutional rights violated by the manner in which his attorney was notified of the hearing on that motion. Again, <u>if</u> Plaintiff was deprived of his constitutional rights because his attorney was not present at the hearing on the motion to quash, <u>that deprivation was caused solely by the trial judge's decision to conduct the hearing without Plaintiff's counsel being present.</u>[6]

In sum, this Court finds, as a matter of law, that Defendant's alleged misdeeds – i.e., the filing, scheduling and manner of giving notice of the hearing on the motion to quash – did not "so directly cause[] the ultimate [alleged] constitutional violation to warrant § 1983 liability." <u>Shrum</u>, 249 F.3d at 780. The allegations in the complaint "fail to establish a causal link between the alleged wrongful action [by Defendant] and deprivation [of Plaintiff's constitutional rights] and, therefore, fail to state a section 1983 [claim]." <u>Gordon</u>, 168 F.3d at 1114. <u>See also Martinez v. California</u>, 444 U.S. 277, 285 (1980) (§ 1983 claim rejected because Plaintiff's injury was "too remote a consequence" of defendants' alleged misdeeds "to hold

———————————————

Plaintiff's counsel was unable to attend the hearing; he apparently knew why Plaintiff's counsel was unable to attend, (<u>see</u> n. 1, <u>supra</u>); and he undoubtedly recognized that the hearing was related to serious criminal charges pending against Plaintiff. Thus, it appears that Judge Pendleton's decision to hear the motion to quash, despite the absence of Plaintiff's counsel, was not based on ignorance or misinformation. Rather, it appears that Judge Pendleton made a fully informed determination that the motion could properly be heard and decided even though Plaintiff's counsel was not present.

[6] Plaintiff has not attempted to sue Judge Pendleton in this action because he has determined, (no doubt correctly), that Judge Pendleton is immune from suit under the doctrine of judicial immunity. Nor has Plaintiff specifically alleged that Defendant "conspired" with Judge Pendleton to violate his constitutional rights, presumably because Plaintiff could not present any specific facts to show the requisite "meeting of the minds" needed to establish such a conspiracy. <u>Madewell</u>, 909 F.2d at 1208.

them responsible under the federal civil rights law"); <u>Kohl v. Casson</u>, 5 F.3d 1141, 1148 (8th

Cir. 1993) (civil rights claim dismissed because there was "no causal connection between any

action on the part of the defendants and any alleged deprivation of [the plaintiff's] Eighth

Amendment rights").   In short, Defendant's allegedly wrongful actions "are simply too

attenuated to state an actionable § 1983 claim."  <u>Doe v. Wright</u>, 82 F.3d 265, 269 (8th Cir.

1996).[7]

## IV. CONCLUSION

        For the reasons discussed above, the Court concludes that Plaintiff cannot maintain

a cause of action under 42 U.S.C. § 1983 based on the facts alleged in his complaint.  It is

therefore recommended that Defendant's motion to dismiss be granted, and that this action

_____

        [7] Defendant argues that a judgment in Plaintiff's favor on his current civil rights claim
would necessarily invalidate any future conviction in Plaintiff's state criminal case, and that this
action is therefore barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  There is no need to
address that argument here, as the Court has already determined, for the reasons discussed
in the text, that Plaintiff's complaint fails to state a cause of action on which relief can be
granted.

        Moreover, dismissing this action pursuant to <u>Heck</u> might suggest that this action is
simply pre-mature, and that it could be brought again later, if Plaintiff is someday convicted,
and his conviction is subsequently overturned.  This Court finds, however, that Plaintiff could
<u>never</u> maintain a § 1983 action against Defendant based on the allegations in his current
pleading – regardless of whether or not he is ever convicted, and regardless of whether or not
any such conviction is later overturned.

        Because Plaintiff is a "prisoner" for purposes of 28 U.S.C. § 1915A, (<u>see</u> § 1915A(c)),
this action can be, and should be, dismissed based on the Court's own independent
determination that no actionable claim for relief has been pleaded.  <u>See</u> § 1915A(b)(1) (in
prisoner cases, the court must conduct an independent review of the complaint, and "identify
cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint...
is frivolous, malicious, or fails to state a claim upon which relief may be granted").  Thus, it is
entirely appropriate to dismiss this action for reasons other than those specifically raised in
Defendant's motion to dismiss.

be dismissed with prejudice.  Given the Court's determination that Plaintiff has failed to state

an actionable claim for relief, it necessarily follows that this motion for summary judgment must

be denied.

## V.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Defendant's motion to dismiss, (Docket No. 4), be GRANTED;

2.  Plaintiff's motion for summary judgment, (Docket No. 13), be DENIED; and

3.  This action be DISMISSED WITH PREJUDICE.


Dated: August 2, 2005

s/ Jonathan Lebedoff
JONATHAN LEBEDOFF
Chief Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by August 19, 2005.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.